IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MELISSA STOKES, AS : | CIVIL ACTION |
| ADMINISTRATRIX FOR THE : | |
| ESTATE OF MATTHEW J. : | |
| MUNRO, : | NO. 08-3775 |
| Plaintiff : | |
| : | |
| v. : | |
| : | |
| NATIONAL RAILROAD : | |
| PASSENGER CORP., et al., : | |
| Defendants : | |

**M E M O R A N D U M**

**STENGEL, J.**                                                                                    **September 23, 2009**

Melissa Stokes, as Administratrix for the estate of Matthew J. Munro, brings this negligence claim for wrongful death and survival actions against the National Railroad Passenger Corporation, Robert W. Knaub, the Pennsylvania Public Utility Commission,[1] and the Borough of Mount Joy.  Mount Joy filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, claiming governmental immunity under the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541, *et seq*.  For the following reasons, I will grant the motion in its entirety.

**I. BACKGROUND**[2]

On August 11, 2006, Matthew Munro and a friend were traveling on foot

---

[1]     All claims against the PUC were dismissed by a stipulation of voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(A)(ii) of the Federal Rules of Civil Procedure.

[2]     All facts are taken from the plaintiff's complaint, and for the purposes of this motion, are accepted as true with all reasonable inferences drawn in favor of the plaintiff.

northward on South Market Avenue in the Borough of Mount Joy, Lancaster County. Munro proceeded to the South Market Avenue pedestrian crossing which consisted of wooden walkways situated over two parallel railroad tracks. It is alleged that Defendant Amtrak owned the crossing at all relevant times. Compl. ¶ 34. While crossing, Munro was struck and killed by a northbound passenger train also owned and operated by Amtrak. Id. at ¶¶ 9-15.

In Count IV of the complaint, the plaintiff asserts that Mount Joy breached its duties to (1) ensure that the crossing could safely accommodate pedestrian traffic; (2) provide the crossing with adequate warning devices to draw attention to approaching trains; and (3) ensure that sightlines at the crossing were free from obstruction, leaving a clear view of approaching trains. Id. at ¶¶ 60-62. Further, the plaintiff asserts that Munro's death was the direct and proximate result of Mount Joy's negligence. Id. at ¶¶ 64-65.

## II.  STANDARD FOR A MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether to grant a motion to dismiss, a federal court must construe the complaint liberally, accept all factual

allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff.  Id.; see also D.P. Enters. v. Bucks County Cmty. Coll., 725 F.2d 943, 944 (3d Cir. 1984).

The Federal Rules of Civil Procedure do not require a plaintiff to plead in detail all of the facts upon which she bases her claim.  Conley, 355 U.S. at 47.  Rather, the Rules require a "short and plain statement" of the claim that will give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  Id.  The "complaint must allege facts suggestive of [the proscribed] conduct."  Twombly, 550 U.S. at 564.  Neither "bald assertions" nor "vague and conclusory allegations" are accepted as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997); Sterling v. Southeastern Pennsylvania Transp. Auth., 897 F. Supp. 893 (E.D. Pa. 1995).  The claim must contain enough factual matters to suggest the required elements of the claim or to "raise a reasonable expectation that discovery will reveal evidence of" those elements.  Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 550 U.S. at 556).

## III.  DISCUSSION

Mount Joy argues that governmental immunity bars the state law negligence claim. Section 8541 of Pennsylvania's Political Subdivision Tort Claims Act states that "no local agency shall be liable for any damages on account of any injury to a person or property

caused by any act of the local agency or an employee thereof or any other person."³ The Pennsylvania Supreme Court has noted that this section creates an "absolute rule of governmental immunity" intended to insulate political subdivisions from tort liability. Mascaro v. Youth Study Ctr., 523 A.2d 1118, 1123 (Pa. 1987). The phrase "any injury" has been construed widely to include all physical, mental, reputational, or economic injuries. E-Z Parks, Inc. v. Philadelphia Parking Auth., 532 A.2d 1272, 1277 (Pa.Super. 1987). However, liability may be imposed on a local agency where (1) damages would be recoverable at common law or under a statute creating a cause of action if the injury were caused by a person not protected by immunity, and (2) the claim falls within one of the eight statutory exceptions to governmental immunity in Section 8542(b) of the Act. Granchi v. Borough of N. Braddock, 810 A.2d 747, 749 (Pa Cmwlth. 2002). Section 8542 provides these exceptions for situations involving (1) the operation of motor vehicles; (2) the care, custody, and control of personal property of others in the possession or control of the local agency; (3) the care, custody and control of real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody and control of animals. 42 Pa.C.S. § 8542(b)(1)-(8). The Supreme Court of Pennsylvania has noted that because of the clear intent of the Act to insulate government from exposure to tort liability, the exceptions to immunity are to be strictly construed. Walker v. Eleby, 842 A.2d 389 (Pa. 2004) (citing

---

³   A "local agency" is defined in the Act as a "government unity other than the Commonwealth government." 42 Pa.C.S. § 8501.

Lockwood v. City of Pittsburgh, 751 A.2d 1136 (Pa. 2000)); see also Mascaro, 523 A.2d at 1123; accord Lory v City of Philadelphia, 674 A.2d 673, 675 (Pa. 1996); Kiley by Kiley v. City of Philadelphia, 645 A.2d 184, 185-186 (Pa. 1994).  The plaintiff argues that Mount Joy is not entitled to governmental immunity because of the third, fourth, sixth, and seventh exceptions of Section 8542(b) of the Act.  I do not agree.

    **A.  Care, Custody, or Control of Real Property**

In order to be exempt from governmental immunity under the third exception, Mount Joy must have been in the care, custody, or control of the real property.  Section 8542(b)(3) provides, in pertinent part, that certain acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

> (3) Real property – The care, custody or control of real property in the possession of the local agency, except that the local agency shall not be liable for damages on account of any injury sustained by a person intentionally trespassing on real property in the possession of the local agency.  As used in this paragraph, "real property" shall not include:
>
> (i)    trees, traffic signs, lights and other traffic controls, street lights and street lighting systems;
> (ii)    facilities of steam, sewer, water, gas and electric systems owned by the local agency and located within rights-of-way;
> (iii)    streets; or
> (iv)    sidewalks.

The pivotal concept in this exception is "possession."  For the purposes of this provision, possession means "total control" over the real property.  Limited control or

5

mere occupation is insufficient to impose liability.  Gramlich v. Lower Southampton Township, et al., 838 A.2d 843, 848 (Pa. Cmwlth. 2003) (citing Sims v. Silver Springs-Martin Luther School, 625 A.2d 1297 (Pa. Cmwlth. 1993)).

Here, the complaint alleges that Amtrak owns the real property where the crossing is located, and that the PUC, Amtrak, and Mount Joy jointly shared control of it.  Compl. ¶¶ 34, 16-18.  The plaintiff's response to the motion indicates that Mount Joy may have exercised control over the crossing at some point prior to Munro's death.  There is no set of facts, however, consistent with these allegations, that imputes Mount Joy with total control, and thus "possession," of the crossing at South Market Avenue.  This is true even if further discovery would reveal that Mount Joy were the owner of the real property where the accident occurred.

Pennsylvania law confers upon the PUC "exclusive jurisdiction of grade crossings and to determine the plans and specifications for a crossing site."  Sickles v Consolidated Railroad Corporation, 777 A.2d 1240, 1244 (Pa. Cmwlth. 2001) (citing Somerset County v. Pennsylvania Public Utility, 1 A.2d 806 (Pa. Super. 1938)).  In accordance with 66 Pa.C.S. § 2702(c), only the PUC has the power to regulate crossings:

> (c) mandatory relocation, alteration, suspension, or abolition –
> Upon its own motion or upon complaint, the commission shall
> have exclusive power after hearing, upon notice to all parties
> in interest, including the owners of adjacent property, to order
> any such crossing heretofore or hereafter constructed to be
> relocated or altered, or to be suspended or abolished upon
> such reasonable terms and conditions as shall be prescribed by
> the commission.  In determining the plans and specifications

6

> for any such crossing, the commission may lay out, establish
> and open such new highways as, in its opinion, may be
> necessary to connect such crossing with any existing highway,
> or make such crossing more available to public use; and may
> abandon or vacate such highways or portions of highways as,
> in the opinion of the commission, may be rendered necessary
> for public use by the construction, relocation or abandonment
> of any such crossings.  The commission may order the work
> of construction, relocation, alteration, protections, suspension
> or abolition of any crossing aforesaid to be performed in
> whole or in party by any public utility or municipal
> corporation concerned or by the Commonwealth or an
> established nonprofit organization with a recreational or
> conservation purpose.

Therefore, the exclusive authority to maintain railroad crossings belongs to the PUC, not to Mount Joy.  <u>Sickles</u>, 777 A.2d at 1245.  Here, it is not alleged that the PUC commissioned Mount Joy to maintain the crossing, and no set of facts would support a finding that Mount Joy was responsible for the maintenance of the crossing under the jurisdiction of the PUC and on real property allegedly owned by Amtrak.  Even if the PUC lacked jurisdiction over the crossing because of its pedestrian-only nature, Mount Joy would still not be liable.  In that case, the duty to maintain the crossing would fall on Amtrak, as the alleged owner of the real property.  See <u>City of Philadelphia v. Pennsylvania Public Utility Commission</u>, 676 A.2d 1298 (Pa. Cmwlth. 1996).

Furthermore, if the plaintiff were to establish that Mount Joy was in total control and thus in "possession" of the crossing, the narrow real estate exemption would impose a standard of liability "to an extent no greater than that of a private landowner, and that this duty is to maintain the property safely for the activities for which it is regularly used, for

7

which it is intended to be used, or for which it may reasonably be foreseen to be used." Mascaro, 523 A.2d at 1123. The conduct or negligent act complained of must be directly related to the condition of the property. Frank v. SEPTA, 506 A.2d 1015 (Pa. Cmwlth. 1986); Fezzano v. Borough of Ridley Park, 503 A.2d 57 (Pa. Cmwlth. 1986). Third party actions are specifically excluded from the general immunities and the eight exceptions. Mascaro, 523 A.2d at 1124. Any harm that others cause may not be imputed to the local agency or its employees. Id. Hence, the real estate exception to governmental immunity applies only when "it is alleged that the artificial condition or defect of the land *itself* causes the injury, not merely when it facilitates the injury by the act of others." Id. (emphasis in original); see also Snyder v Harmon, 562 A.2d 307, 312 (Pa. 1989) (in order for the real property exception to apply it must be alleged that the artificial condition or defect of the land caused the injury, not merely when it facilitated the injury by the acts of others). Munro was struck and killed by a train. The train was owned by Amtrak, and was operating at a crossing for which Mount Joy bore no responsibility. Because the complaint alleges defects in the warning devices and the sightlines of the tracks with no defects alleged of the land itself, Mount Joy cannot be exempted from governmental immunity for Munro's death under the real estate exception. See Compl. ¶¶ 61, 62.

### B. Trees, Traffic Controls and Street Lighting

The plaintiff next argues that the fourth exception to governmental immunity

applies.[4] However, the subparagraphs in the complaint which the plaintiff maintains are germane to this exception all explicitly refer to the placing and maintenance of signals and warning devices at the South Market Avenue crossing. The Act requires the same to be "under the care, custody or control of the local agency." Mount Joy neither owns the real property nor boasts jurisdictional authority over the crossing. The plaintiff has not alleged any dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems "under the care, custody or control" of Mount Joy. Because the PUC maintains a legislative grant of exclusive authority over the crossing, the fourth exception to governmental immunity does not apply here.

Even accepting the plaintiff's contention that the PUC lacks jurisdiction over pedestrian-only crossings,[5] Mount Joy still prevails. Although the Act provides no definition for "traffic control," Pennsylvania's Vehicle Code defines a "traffic-control signal" as a "device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and permitted to proceed." See 75 Pa.C.S. § 102.

---

[4] The fourth exception to governmental immunity provides that a "dangerous condition of trees, traffic signs, lights or other traffic controls, street lights or street lighting systems under the care, custody or control of the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition." See 42 Pa.C.S. § 8542(b)(4).

[5] For this contention, the plaintiff cites County of Bucks v. Public Utility Commission, 684 A.2d 678 (Pa. Cmwlth. 1996) (holding that the PUC has no authority over pedestrian crossings as opposed to "highway" crossings) and Norfolk Southern Ry. Co. v. Pennsylvania Public Utility Commission, 875 A.2d 1243 (Pa. Cmwlth. 2005) (holding that the PUC has authority over pedestrian crossings, not by statute, but according to prior agreement).

The Code also defines an "official traffic-control device" as "signs, signals, markings and devices not inconsistent with this title placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic."  Id. "Traffic" as defined in the Vehicle Code, includes pedestrians as well as vehicles, but to qualify as traffic, the entity must be "using any highway for purposes of travel."  Id. Finally, "highway" is defined as "[t]he entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of *vehicular travel* …"  Id. (emphasis added).  The South Market Avenue crossing is used only for pedestrian traffic, and is not open to vehicular travel.

Here, the complaint alleges the insufficiency only of the warning devices, crossing gates, and the signals as they pertain to pedestrians.  See Compl. ¶ 63.  There are no allegations relating to "trees, traffic signs, lights or other traffic controls, street lights or street lighting systems."  Moreover, the traffic controls referred to in the Act, as defined in the Vehicle Code, apply only when pedestrians are using ways of vehicular travel.  See 75 Pa.C.S. § 102.  Railroad warning devices, crossing gates, and signals at a pedestrian crossing do not qualify for the traffic controls exception.  Accordingly, the fourth exception to governmental immunity also does not apply.

### C. Streets

The plaintiff next argues that Mount Joy cannot receive governmental immunity because of the Act's sixth exception.  Section 8542(b)(6) of the Act provides that

imposition of liability on a local agency may result where:

> (i) A dangerous condition of streets owned by the local agency, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.
>
> (ii) A dangerous condition of streets owned or under the jurisdiction of Commonwealth agencies, if all of the following conditions are met:
>
>> (A) The local agency has entered into a written contract with a Commonwealth agency for the maintenance and repair by the local agency of such streets and the contract either:  (i) had not expired or been otherwise terminated prior to the occurrence of this injury; or (ii) if expired, contained a provision that expressly established local agency responsibility beyond the term of the contract for injuries arising out of the local agency's work.
>>
>> (B) The injury and dangerous condition were directly caused by the negligent performance of its duties under such contract.
>>
>> (C) The claimant must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition.

42 Pa.C.S. § 8542(b)(6).

Thus, under this exception, the plaintiff must first show that the area in which the crossing is located is considered a "street" owned by a local agency. Mount Joy can only be liable for a dangerous condition of a street if it owns the street or if it has a written contract with a Commonwealth agency which owns the street to maintain and repair the street. Verna v. Commonwealth, 613 A.2d 174, 177 (Pa. Cmwlth. 1992). The Pennsylvania courts have defined the term "street" for purposes of governmental immunity as, "[a] road or public thoroughfare used for travel in an urban area, including the pavement, shoulders, gutters, curbs, and other areas within the street lines." Granchi, 810 A.2d at 749. Courts also distinguish between the unpaved area of the right-of-way and the "paved and traveled portion of the highway." See Gramlich, 838 A.2d at 843 (holding that the streets exception applies only to the paved and traveled portion of a highway); see also Babcock v. Commonwealth of Pennsylvania, Department of Transportation, 626 A.2d 672 (Pa. Cmwlth. 1993) (same). In Babcock, the plaintiff was injured when the car she was driving left the paved highway and struck a log located on the grassy area several feet from the paved surface of the highway, but still within the Commonwealth's right-of-way. Id. at 673. The Commonwealth Court explained that a highway, for purposes of governmental immunity, encompasses the "cartway," that is, the paved and traveled portion of the highway, and the "berm" or shoulder, the paved portion to either side of the actual traveled portion of the road. Id. The court concluded that the

right-of-way off the highway is neither intended to be used nor is regularly used for vehicular travel.  Id. at 675.  The court finally determined that because of the distinction between the highway and the grassy area upon which the accident took place, it was insufficient to bring the case within the streets exception to governmental immunity.  Id.

Here, the complaint makes no allegation of a "dangerous condition of [the] streets" that caused Munro's tragic death.  It has not been proven that Mount Joy owns the property upon which the crossing lies.  The unpaved crossing is constructed of wooden planks to provide solely for pedestrian traffic across the train tracks.  Accordingly, it is not a street as defined for purposes of the Act, and the sixth exception to governmental immunity does not apply.

**D.  Sidewalks**

The plaintiff finally argues that Mount Joy is not entitled to governmental immunity because of the Act's seventh exception, which provides:

> A dangerous condition of sidewalks **within the rights-of-way of streets owned by the local agency**, except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and that the local agency had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior to the event to have taken measures to protect against the dangerous condition. When a local agency is liable for damages under this paragraph by reason of its power and authority to require installation and repair of sidewalks under the care, custody and control or other persons, the local agency shall be secondarily liable only and such other persons shall be primarily liable.

42 Pa.C.S. § 8542(b)(7) (emphasis added).

To deprive a local agency of governmental immunity pursuant to this exception, "an actionable dangerous condition of government property must derive, originate from, or have as its source the property in question and may not arise from a source outside the property." Finn v City of Philadelphia, 664 A.2d 1342 (Pa. 1995) (holding that grease, because it does not derive or originate from the sidewalk, cannot be considered a defect of the sidewalk itself). In Finn, Pennsylvania's Supreme Court found that the language of the seventh exception sheds light on what the legislature meant by "dangerous condition of sidewalks:"

> In distinguishing situations creating either primary or secondary liability of a governmental agency, the negligence of the agency relates to "installation and repair of sidewalks." Installation and repair refer to the physical condition of the sidewalks themselves; by contrast, objects and substances upon sidewalks are not part of the physical condition of the sidewalks themselves. The language used in this section of the statute thus affords no basis to assert that foreign matter on sidewalks might result in governmental liability. …
>
> What is necessary, therefore, to pierce the Commonwealth agency's immunity is proof of a defect of the sidewalk itself. Such proof might include an improperly designed sidewalk, an improperly constructed sidewalk, or a badly maintained, deteriorating, crumbling sidewalk. Here, however, we have no such allegation or proof. We have a perfectly designed and constructed sidewalk, undamaged, upon which an unidentified individual or individuals deposited a foreign substance which caused appellant's injury. In the terms of Snyder, the dangerous condition did not derive, originate from or have as its source the sidewalk. In the language of the statutory exception to governmental immunity, the dangerous

>condition was on the sidewalk, not of the sidewalk, and thus is insufficient to create liability in the city.

Id. at 1345-1346.

Here, assuming that the crossing could be considered a sidewalk, and even a sidewalk within the rights-of-way of streets owned by Mount Joy, the seventh exception to governmental immunity would still not apply.  There is neither an allegation nor proof of a defect of the crossing itself.  The complaint does not allege an improper design, improper construction, bad maintenance, or deterioration of the crossing.  It further does not allege that any dangerous condition of the crossing caused the accident.  Rather, the allegations in the complaint concern improper or insufficient warning devices and signals at the crossing, and their faulty maintenance.  See Compl. ¶ 63(a)-(r).  These devices and signals, however, are not part of the physical condition of the crossing itself, and thus can provide no basis for governmental liability.  Finn, 664 A.2d at 1345.  Accordingly, the seventh exception to governmental immunity also does not apply.

In conclusion, given the clear intent of the Act to insulate local agencies from exposure to tort liability, and strictly construing the Act's exceptions to governmental immunity, I find that none of the allegations in the complaint support any of those exceptions.  I further find that Mount Joy is entitled to governmental immunity from the negligence claim alleged against it in this complaint.  I will grant Mount Joy's motion to dismiss in its entirety.

An appropriate Order follows.